UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JERRY GRADL MOTORS, INC., and LIFETIME
MOTOR CARS, INC., Individually and
On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

ACV AUCTIONS, INC., SUN CHEVROLET, INC.,
WHOLESALE CARS ONLINE.COM., L.L.C. d/b/a SUN
AUTO WAREHOUSE, WHOLESALE CARS ONLINE.COM,
L.L.C. d/b/a SUN AUTO WAREHOUSE OF CORTLAND,
BRIAN M. MALCHAK, JOSEPH NEIMAN, GEORGE
CHAMOUN, DANIEL MAGNUSZEWSKI and
TODD J. CAPUTO

Defendants

**SECOND AMENDED
CLASS ACTION
COMPLAINT**

Civil Action No. 21-CV-409

---

Plaintiffs Jerry Gradl Motors, Inc. and Lifetime Motor Cars, Inc. (collectively the "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys HoganWillig, PLLC, for their Second Amended Class Action Complaint herein alleges as follows:

## NATURE OF THE CASE

1.      This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure asserting claims under the Sherman Act (15 U.S.C. § 1), the Clayton Act (15 U.S.C. § 15), the Donnelly Act (Section 340 of N.Y. General Business Law), the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968), Section 349 of the N.Y. General Business Law and the common law. The aforementioned claims arise from the Defendants' wrongful conduct of employing a shill bidding practice in which the Defendants used an online automobile auction platform to knowingly cause bidders

such as the Plaintiffs and Class members to bid and pay more than they otherwise would for motor vehicles offered for sale using the aforementioned online auction platform.

## PARTIES

2.      Plaintiff Jerry Gradl Motors, Inc. ("Gradl") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 711 Niagara Falls Boulevard, North Tonawanda, New York.

3.      Plaintiff Lifetime Motor Cars, Inc. ("Lifetime Motor Cars") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 261 Mill Street, East Aurora, New York.

4.      Upon information and belief, ACV Auctions, Inc. ("ACV") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 640 Ellicott Street, Buffalo, New York.

5.      Upon information and belief, Defendant Sun Chevrolet, Inc. ("Sun Auto") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 104 West Genesee Street, Chittenango, New York.

6.      Upon information and belief, Defendant Wholesale Cars Online.Com, L.L.C. is a limited liability company organized and existing under the laws of the State of New York with its principal offices located at 7966 Indian Hill Road, Manlius, New York, doing business under the name Sun Auto Warehouse at 8010 Brewerton Road, Cicero, New York ("Sun Auto").

7.      Upon information and belief, Defendant Wholesale Cars Online.Com, L.L.C. is a limited liability company organized and existing under the laws of the State of New

York with its principal offices located at 7966 Indian Hill Road, Manlius, New York also doing business as Sun Auto Warehouse of Cortland at 3861 West Road, Cortland, New York ("Sun Auto").[1]

8.     Upon information and belief, Defendant Brian M. Malchak ("Malchak") is a natural person residing at 2272 Ridge Road, McGraw, New York.

9.     Upon information and belief, Defendant Joseph Neiman ("Neiman") is a natural person residing at 1441 Rebecca Lane, Sarasota, Florida.

10.     Upon information and belief, Defendant George Chamoun ("Chamoun") is a natural person residing at 60 Briarhill Road, Williamsville, New York.

11.     Upon information and belief, Defendant Daniel Magnuszewski is a natural person residing at 52 Haverton Lane, Buffalo, New York.

12.     Upon information and belief, Defendant Todd J. Caputo is a natural person residing at 7990 Indian Hill Road, Manlius, New York.

## JURISDICTION

13.     Jurisdiction is in the United States District Court pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1, 15 U.S.C. § 15 and the Court's supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1367 for the Plaintiffs' and New York Subclass members' State claims herein.

14.     As a party who has transacted business within the State of New York, committed tortious acts within the State and derived substantial revenue from services

---

[1] Sun Chevrolet Inc., Wholesale Cars Online.Com L.L.C. d/b/a Sun Auto Warehouse and Wholesale Cars Online.Com, L.L.C. d/b/a Sun Auto Warehouse of Cortland are hereinafter referred to collectively in this Second Amended Class Action Complaint as "Sun Auto".

rendered within the State of New York, the Court may exercise personal jurisdiction over Defendant Neiman pursuant to CPLR § 302(a)(1), (2) and (3)(i).

## VENUE

15.     Venue for this action is proper in the Western District of New York pursuant to 28 U.S.C. 1391(b)(2) being the judicial district in which a substantial part of the events giving rise to the claims herein occurred.

## STATEMENT OF FACTS

16.     ACV offers an online platform to enable used car dealers to view, bid upon and purchase an inventory of automobiles and other motor vehicles through an online auction.

17.     The ACV online auction lasts a maximum of twenty (20) minutes for each automobile or other motor vehicle offered for sale to allow bidders to place bids for any particular vehicle using ACV's services and the ACV platform software allows the seller to establish the minimum price (hereinafter the "floor price") at which the vehicle can be automatically sold to a buyer during the auction; all legitimate bidders are unaware of the floor price.

18.     If a bid placed by a bidder exceeds the seller's floor price within the twenty (20) minute auction for a vehicle, the software for the ACV online system facilitates an automatic sale to the highest bidder whose bid exceeds the seller's floor price.

19.     As the bidding proceeds, if a bid is submitted which is surpassed by a competing bid, the ACV online system advises the bidder that the bid is unsuccessful and that the bidder has been outbid.

20.    In addition, when the bidding (with or without shill bidding) does not go above the floor price, the seller has the option to accept the highest bid.

21.    The software for the ACV auction platform permits a bidder to make a proxy bid for a particular vehicle at a specified price prior to the beginning of the auction and all legitimate bidders are unaware of the bidder's proxy bid.

22.    Sun Auto are automobile dealers which used ACV's online services to sell automobiles and other motor vehicles to dealers and any other parties who utilized the ACV online auction platform.

23.    During the Class Period (January 2015 through June 2019), the Plaintiffs and Class members used ACV's online auction services to purchase automobiles and other vehicles from Sun Auto.

24.    Defendant Malchak is a used car dealer in the Syracuse area who had a business association with Sun Auto and a business association with Sun Auto employee Dominick (D.J.) Mollica; using the above-described ACV online auction platform and by prior agreement with ACV and Sun Auto, during the Class Period Malchak participated in the shill bidding activities with ACV and Sun Auto described below.

25.    Upon information and belief, by prior agreement with ACV and Sun Auto, the Sun Auto floor price of the vehicle being offered for sale by Sun Auto using the ACV online platform was disclosed to Malchak and, with knowledge of that information, Malchak presented a phantom proxy bid at a price below the floor price for the purpose of causing competing bids to increase (i.e. "shill up") with no intention of purchasing the motor vehicle being offered for sale by Sun Auto.

26.     As legitimate bidders placed bids while the Malchak proxy bid was in place, bids at any price below the Malchak bid price were automatically outbid by Malchak and such unsuccessful bidders were advised they had been outbid by the ACV online platform software.

27.     Upon information and belief and in the alternative, Malchak combined his use of the aforesaid phantom proxy bids with live bids made without the intention to purchase vehicles and for the purpose of "shilling up" bid prices (the foregoing are collectively referred to herein as Malchak's "shill bids").

28.     In order to outbid the Malchak shill bids and purchase the vehicles being offered for sale by Sun Auto on the ACV online platform, bidders had to bid at prices higher than they would otherwise bid, and purchasers of the vehicles would have to pay a price higher than they would otherwise pay without the Malchak shill bids.

29.     Defendant Malchak and Sun Auto employee D.J. Mollica engaged in shill bidding on sales of Sun Auto cars using the ACV auction platform. As noted above, the seller's floor price is information which is unavailable to any legitimate bidder.  Malchak used his relationships with Sun Auto, Caputo and Mollica to obtain the Sun Auto floor price in order to make shill bids on the ACV platform; ACV's records show that Sun Auto employees in addition to D.J. Mollica were also engaged in shill bidding with Malchak on the ACV auction platform, which is information all ACV management personnel would have had knowledge of through access to ACV's auction records.

30.     The fact that Malchak was shill bidding on vehicles being sold by Sun Auto on the ACV online auction platform and had no intention of purchasing the vehicles he was purportedly bidding on is confirmed by the parties' conduct described herein.

31.    In that connection, as noted above, if bidding on a specific vehicle does not reach the seller's floor price during the ACV auction, the seller has the option to accept the highest bid; when the highest bidder is offered the sale in that manner the ACV auction software says "pending sale."

32.    On many occasions during the Class Period – including numerous transactions in direct succession – Malchak was the high bidder on Sun Auto vehicles which did not automatically sell on the ACV auction platform and Malchak declined the offer to purchase the Sun Auto vehicle; the obvious reason for the foregoing is that Malchak was shill bidding on Sun Auto vehicles without any intention to purchase the vehicles.

33.    The documents attached as **Exhibit "A"** are ACV records that list auctions in 2018 and 2019 in which a Sun Auto dealership (Used Car King of Cicero - Seller's Dealership Acct. No. 1297) is the seller. The three-page document lists Sun Auto employees Dominic Mollica, Larry Chilton or Peter Detor as the seller and Brian M. Malchak as the buyer. For each of the thirty-two (32) transactions listed, the document states "Counter Original  Declined  No Sale", which means that Malchak was the high bidder for the referenced automobile but did not proceed with the sale.

34.    The documents attached as **Exhibit "B"** are also ACV records for transactions in which Sun Auto dealership Used Car King of Cicero was the dealership offering the automobile for sale. Sun Auto employee Peter Detor was listed as the seller and Malchak listed as the buyer.  Again, for the fifty-eight (58) transactions listed, the document states "Counter Original Declined No Sale" for all but two (2) of the

transactions, which means that Malchak was the high bidder but did not proceed with a purchase on all but two (2) of the transactions.

35.     The documents attached as **Exhibit "C"** are also ACV records. For the three (3) referenced Sun Auto dealerships (Sun Chevrolet – Seller's Dealership No. 1889, Use Car King of Cicero - Seller's Dealership No. 1297 and Used Car King of Cortland – Seller's Dealership No. 1890) the documents record transactions between October 1, 2016 and May 12, 2021 in which Malchak was the high bidder and either (a) purchased the vehicle or (b) declined to purchase the vehicle.

36.     The aforementioned ACV auction records attached as Exhibits show the following for the referenced Sun Auto dealerships:

- <u>Sun Chevrolet</u> – As high bidder Malchak purchased fourteen (14) cars and declined to purchase 359 cars.

- <u>Used Car King of Cicero</u> – As high bidder Malchak purchased thirty-one (31) cars and declined to purchase 352 cars.

- <u>Used Car King of Cortland</u> – As high bidder Malchak purchased twelve (12) cars and declined to purchase 195 cars.

- Of the 963 cars being auctioned, as high bidder Malchak only purchased a total of fifty-seven (57), which is .06% of the total.

37.     ACV had the right and technological ability to suspend or terminate a bidder's auction account upon learning of bidding irregularities involving the use of the bidder's account, such as the aforesaid irregularities involving Malchak's bidding account.

38.     Upon information and belief, in addition to having data which gave ACV reason to believe Malchak's account was being used to engage in bidding irregularities,

ACV management personnel were specifically advised of Malchak's bidding irregularities by an ACV employee and did not suspend or terminate Malchak's account, nor take any action in reference to Malchak's bidding account; the foregoing indicates that ACV was aware of Malchak's bidding irregularities and agreed to permit the same to continue.

39.    Indeed, upon being advised of the improper shill bidding activity of Defendants Malchak and Sun Auto by the aforementioned ACV employee, the high level ACV executive responded to the ACV employee by saying "leave that issue alone" and "drop it for your own good."

40.    Furthermore, upon information and belief, in addition to shill bidding being a regular practice on ACV's online auction platform which caused financial damage to legitimate bidders such as the Plaintiffs and Class members in this case, the practice was financially damaging to ACV employees who lost the benefit of sales transactions if bids on those sales did not meet the improper shill price, and ACV vigorously discouraged any complaints by ACV employees about the ongoing shill bidding practice.

41.    The shill bidding practice described herein was predicated on wrongful conduct of the Defendants fraudulently concealed from legitimate bidders who used the ACV online auction platform during the Class Period and constituted continuing violations of the statutes described herein during the Class Period, and continuing fraudulent and inequitable conduct described herein during the Class Period.

42.    The bidders who bid on motor vehicles offered for sale by Sun Auto on the ACV online auction platform during the Class Period were located in New York and other states and used the internet to engage in the transactions at issue and, therefore, the

Defendants' wrongful conduct described herein involved and infected federal interstate commerce.

## CLASS ACTION ALLEGATIONS

43.     The Plaintiffs bring this action on behalf of themselves and all other similarly-situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class: Any bidders using the ACV online auction platform during the Class Period (January 2015 through June 2019) who bid on motor vehicles being offered for sale by Sun Auto without knowledge of the Sun Auto floor price while Malchak made improper shill bids on the same motor vehicle with prior knowledge of the Sun Auto floor price. The aforesaid Class includes successful bidders who purchased the motor vehicle and bidders who placed unsuccessful bids.

44.     The Plaintiffs also seek certification of the following New York Subclass pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure: Any bidders placing bids from locations within the State of New York using the ACV online auction platform during the Class Period who bid on motor vehicles being offered for sale by Sun Auto without knowledge of the Sun Auto floor price while Malchak made improper shill bids on the same motor vehicles with prior knowledge of the Sun Auto floor price. The aforesaid Subclass includes successful bidders who purchased the motor vehicle and bidders who placed unsuccessful bids.

45.     **Numerosity.** The Classes are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiffs have reason to believe that there are hundreds of members of the Class.  Class members may be identified through

objective means and notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

46. **Commonality and Predominance.** This action involves common questions or law and fact that predominate over any questions affecting individual Class members. These common questions include, but are not limited to:

a) Whether the Defendants entered into an agreement to use the ACV online platform to cause Class members to bid more than they would otherwise bid on motor vehicles offered for sale by Sun Auto and to pay more than they would otherwise pay for motor vehicles sold by Sun Auto using the ACV online platform;

b) Whether by entering into and knowingly participating in the aforesaid agreement the Defendants put bidders at a disadvantage and thereby engaged in an illegal antitrust practice;

c) Whether Defendants Neiman, Chamoun, Caputo and Magnuszewski engaged in a fraudulent shill bidding scheme to use the wires to cause legitimate bidders such as the Plaintiffs and Class members to pay more than they otherwise would for Sun Auto vehicles sold on the ACV online auction platform and thereby violated 18 U.S.C. §§ 1961-1968 (the Racketeer Influenced and Corrupt Organizations Act).

d) Whether the Defendants deceived the Class members by concealing that Malchak made improper shill bids on motor vehicles being offered for sale by Sun Auto with prior knowledge of the Sun Auto floor price; and

e) Whether members of both Classes were damaged by the Defendants' anti-competitive, deceptive and fraudulent conduct.

47.     **Typicality.** The Plaintiffs are typical of members of both Classes. The Plaintiffs are used car dealers located in New York State who use the ACV online auction platform to view, bid upon, and purchase automobiles and other motor vehicles offered for sale by Sun Auto during the Class Period, which is the time period Malchak was making the above-described improper shill bids on motor vehicles offered for sale by Sun Auto, and the Plaintiffs were injured by bidding more than they would otherwise bid and paying more than they would otherwise pay for vehicles offered for sale by Sun Auto because it was necessary to out-bid Malchak's improper shill bids.

48.     **Adequacy.** The Plaintiffs are adequate representatives of both Classes because Plaintiffs are members of both Classes and are committed to pursuing this matter to obtain relief for themselves and for both Classes. The Plaintiffs have no conflicts of interest with either Class. Plaintiffs have also retained counsel competent and experienced in complex class action litigation. The Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Classes.

49.     **Superiority.** Class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The primary purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to the individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by the Plaintiffs and the Class members may be relatively small compared to the burden and expense required to individually litigate their claims against

the Defendants and, therefore, individual litigation to redress the wrongful conduct of the Defendants would be impracticable. Individual litigation by each Class member would also strain the Court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the Court system. By contrast, the class action mechanism presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single Court.

### FIRST CAUSE OF ACTION

### VIOLATION OF SHERMAN ACT
### AND CLAYTON ACT

50.     Plaintiffs repeat and reallege paragraphs "1" through "49" as if fully set forth herein.

51.     By agreeing to engage in the unlawful shill bidding combination described above, the Defendants have engaged in an illegal anticompetitive practice which requires legitimate bidders such as the Plaintiffs and Class members to make bids which exceed Malchak's improper shill bids in order to purchase the motor vehicles being offered for sale by Sun Auto on the ACV auction platform.

52.     When bidding on Sun Auto vehicles, legitimate bidders such as the Plaintiffs and Class members do not know the floor price of the Sun Auto vehicles being auctioned on the ACV online platform, and do not know that another purported bidder – Malchak – does know the Sun Auto floor price.

53.     The aforesaid shill bidding practice is inherently unfair and puts legitimate bidders such as the Plaintiffs and Class members at an immediate disadvantage because

such bidders are pre-determined to be outbid by the improper Malchak shill bids, causing the legitimate bids below the Malchak shill bids to have no possibility of being successful.

54.     The aforesaid shill bidding practice is anticompetitive and violative of the antitrust laws because it unlawfully drives up the prices for the vehicles being sold since it requires legitimate bidders such as the Plaintiffs and the Class members to bid more than they would otherwise bid without the improper shill bids of Malchak for Sun Auto motor vehicles being auctioned on the ACV online platform.

55.     The aforesaid shill bidding practice is similarly anticompetitive and violative of the antitrust laws because it requires legitimate bidders such as the Plaintiffs and Class members whose bids are successful to pay more than they would otherwise pay for the Sun Auto motor vehicles being auctioned on the ACV online platform.

56.     Knowing legitimate bidders such as the Plaintiffs and Class members must out-bid Malchak's improper shill bids to be successful, which results in the legitimate bidding to be "shilled up" (i.e., to drive up the price), upon information and belief, when improper shill bids are being submitted by Malchak the prices for Sun Auto vehicles on the ACV online platform were set artificially high in relation to the fair market value.

57.     Upon information and belief, when Sun Auto vehicles were sold on the ACV online platform when improper shill bids were submitted by Malchak, the revenue received by Sun Auto and ACV for each vehicle sold was higher than the revenue which would have been received without the Malchak shill bids.

58.     Furthermore, upon information and belief, in addition to Sun Auto being ACV's largest customer using ACV's online auction platform to sell vehicles during the Class Period, Sun Auto was an investor in ACV and, therefore, Sun Auto and ACV shared

a common interest in increasing the revenue received through the above-described anticompetitive shill bidding practice.

59.    In addition to the Defendants' above-described shill bidding practice being anticompetitive and unlawful because it causes legitimate bidders to bid and pay more than they would otherwise pay for Sun Auto vehicles, the practice is also anticompetitive and unlawful because it causes bidders such as the Plaintiffs and Class members to believe that there is greater demand for the Sun Auto vehicles then actually exists in the market.

60.    Upon being deceived into believing there is greater demand for the vehicles than actually exists in the market, bidders are unlawfully led to believe that the market justifies higher bids for the Sun Auto vehicles being auctioned on the ACV online platform.

61.    The excessive amount paid by the Plaintiffs and Class members for Sun Auto vehicles unlawfully sold using the ACV online auction due to the above-described anticompetitive shill bidding practice is the actual injury sustained by the Plaintiffs and Class members and is injury of the type the antitrust laws were intended to prevent.

62.    Moreover, as victims of the Defendants' illegal anticompetitive conduct whose claims are typical of the members of both Classes herein, the Plaintiffs are efficient enforcers of the antitrust laws being vindicated and enforced in this action for reasons which include, without limitation, the following:

   a) The Plaintiffs and Class members have sustained direct damages consisting of the excessive amounts bid and paid for Sun Auto vehicles sold using the ACV online auction platform;

b) Being bidders who bid on vehicles being sold through the ACV online auction platform during the Class Period and suffered damages as a result, the Plaintiffs and Class members are an identifiable group whose self-interest in a recovery motivates them to vindicate the public interest in antitrust enforcement; and

c) The infliction of damages on the Plaintiffs and Class members is a certainty which can be ascertained and calculated and using their own business records, business records of ACV and Sun Auto, and publicly available market information reflecting the fair market value of the Sun Auto vehicles sold using the ACV online auction platform during the Class Period.

63.     By reason of having engaged in the above-described anticompetitive shill bidding practice, the Defendants have engaged in illegal conduct in restraint of trade consisting of a per se violation of Section 1 of the Sherman Act (15 U.S.C. §1).

64.     The Plaintiffs and Class members herein have "antitrust standing" pursuant to Section 4 of the Clayton Act (15 U.S.C. §15) both by being persons or entities "injured in [their] business or property by reason of . . . [acts] . . . forbidden in the antitrust law" and by virtue of being persons or entities having suffered damage directly attributable to an anticompetitive aspect of the above-described shill bidding practice.

65.     As a result of the aforesaid acts of the Defendants in violation of the antitrust law, the Defendants should be found liable to the Plaintiffs and Class members an amount not less than of $5,000,000, together with treble damages and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
## VIOLATION OF DONNELLY ACT
## (NEW YORK SUBCLASS)

66.     Plaintiffs repeat and reallege paragraphs "1" through "65" as if fully set forth herein.

67.     As parties who use the ACV online auction platform to purchase motor vehicles from Sun Auto to acquire their inventory of used automobiles and other vehicles, the Plaintiffs and Class members are consumers in the relevant market at issue in this action.

68.     Moreover, the above-described agreement among the Defendants to engage in the aforesaid illegal shill bidding practice constitutes an unlawful combination in restraint of trade in violation of the Donnelly Act.

69.     Claims under the Donnelly Act are interpreted in the same manner as federal antitrust claims under the Sherman Act and the New York State antitrust claims asserted in the instant Cause of Action are premised on the same factual allegations as the claims under the Sherman Act set forth in the preceding Cause of Action herein.

70.     Therefore, the allegations in the preceding Cause of Action giving rise to the Plaintiffs' claims against the Defendants under the Sherman Act and Clayton Action are respectfully incorporated and repeated herein in the instant Cause of Action.

71.     As a result of the aforesaid acts of the Defendants in violation of the Donnelly Act, the Defendants should be found liable to the Plaintiffs and New York Subclass members in an amount not less than $5,000,000, together with the treble damages and reasonable attorneys fees.

**THIRD CAUSE OF ACTION**

**(AGAINST DEFENDANTS NEIMAN, CHAMOUN,
CAPUTO AND MAGNUSZEWSKI)**

**VIOLATIONS OF RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C.
§§ 1961-1968 ("RICO")**

72.     Plaintiffs repeat and reallege paragraphs "1" through "71" as it fully set forth herein.

73.     The Plaintiffs and each Class member are "persons" as that term is defined in 18 U.S.C. §§ 1961(3) and 1962(c).

74.     For purposes of this Cause of Action, ACV is a corporation which is the RICO "enterprise" as that term is defined in 18 U.S.C. §§ 1961(4) and 1962(c).

75.     As stated above, ACV offers an online auction platform to enable bidders located in New York State and other states to use the internet to bid on motor vehicles being offered for sale and, as such, ACV's business activities affect interstate commerce.

76.     Defendants Neiman, Chamoun, Caputo and Magnuszewski are each a "person" employed by or associated with an "enterprise" as defined in 18 U.S.C.§ 1962(c).

77.     As the RICO "enterprise" herein, ACV has operated since at least 2015 and its operations are continuous and ongoing and it has an ascertainable corporate structure and existence which is distinct and separate from the pattern of racketeering activity in which Defendants Neiman, Chamoun, Caputo and Magnuszewski have engaged.

78.     Defendants Neiman, Chamoun, and Magnuszewski are employed by ACV and hold high management positions at ACV and use their positions of authority, intimate

knowledge of ACV's business operations and access to ACV's business data to carry out their roles as participants in the racketeering activity described herein.

79.     In addition to being the owner of Sun Auto at all relevant times which was ACV'S largest sales customer, Defendant Caputo was an investor in ACV and was therefore associated with ACV as the RICO "enterprise" herein and – in agreement with Defendants Neiman, Chamoun, and Magnuszewski – knowingly participated in the pattern of racketeering activity described herein.

80.     By reason of their positions of authority, access to corporate information and direct control of ACV and Sun Auto employees, agents and operations, Neiman, Chamoun, Caputo and Magnuszewski caused and aided and abetted the ongoing pattern of racketeering activity described herein.

## A. The Pattern of Racketeering Activity

81.     It was ACV's overriding business goal throughout the above-described Class Period – and through the present date – to generate the highest possible sale price for each vehicle offered for sale on its online auction platform; this goal and the pressure created by ACV's management at the highest levels led to the widespread use of unethical methods (regardless of legal concerns), including the online shill bidding described in this Complaint.

82.     Shill bidding was a pervasive practice at ACV; not only was shill bidding openly encouraged by ACV management, including Defendants Neiman, Chamoun, and Magnuszewski, many ACV management personnel had "dummy" bidding accounts that were used to make their own shill bids on ACV's online auction platform.

83.     In executing ACV's shill bidding practice, Defendant Neiman and other high level ACV executives would contact persons with ACV bidding accounts to advise that ACV needed a "bump" or "help" on an online ACV auction where bidding activity was low in order to generate bidding and increase prices; the "bump" and "help" referenced was shill bidding.

84.     Shill bidding was so pervasive and such a common practice at ACV that new employees were warned against bidding in live online auctions on the ACV auction platform because the auction could involve shill bidders improperly raising the price of the vehicle being sold.

85.     A clear indication of the acceptance of shill bidding as a common and ongoing business practice at ACV is the fact that ACV management at the highest levels personally participated in shill bidding on ACV's online auction platform.

86.     Specifically, Defendant Neiman had a personal app which he used to engage in shill bidding on the ACV online auction platform; the app allowed Neiman to see the seller's floor price which is never disclosed to legitimate bidders such as the Plaintiffs and Class members.

87.     Upon information and belief, Defendant Neiman's personal bidding app was developed by or with the assistance of ACV's Chief Technology Officer, Defendant Magnuszewski.

88.     In addition, Defendant Neiman used internal ACV information – including the floor price of the vehicles being sold – to purchase vehicles on the ACV auction platform for an automobile sales company separate from ACV which was owned by Neiman personally.

89.     Neiman was improperly using internal ACV vehicle and sales information to benefit himself personally and was essentially the auctioneer bidding on his own behalf on items being auctioned.

90.     Although shill bidding was clearly used when Sun Auto vehicles were being auctioned on the ACV auction platform through the unlawful conduct described herein, shill bidding was not limited to the sales of Sun Auto vehicles.

91.     In fact, upon information and belief, it is estimated that shill bidding was used on ACV's online auction sales for approximately one-half of the automobile dealers who used the ACV auction platform to sell used cars.

92.     Shill bidding was a continuous and repeated practice utilized by ACV and Sun Auto for auction transactions involving the sale of Sun Auto vehicles on the ACV online auction platform.

93.     In that connection, as stated above (Pars. 33-36, Exs. "A", "B", and "C"), Defendant Malchak used shill bidding on Sun Auto sales of at least 906 Sun Auto vehicles on the ACV auction platform (that is the number of sales where Malchak was the high bidder but declined to purchase the vehicle).

94.     Defendants Neiman, Chamoun, Caputo and Magnuszewski (the "RICO Defendants") conducted the affairs of ACV as the RICO "enterprise" and participated in the management and operations thereof by at least the following wrongful conduct:

        a)     The RICO Defendants knew that the Sun Auto floor price was being improperly disclosed to Defendant Malchak and that legitimate bidders bidding on Sun Auto vehicles did not know the Sun Auto floor price and did know that the Sun Auto floor price was being wrongfully disclosed to Defendant Malchak;

b)     The RICO Defendants knew and agreed that Defendant Malchak would use information relative to the Sun Auto floor price to engage in shill bidding on the sale of Sun Auto vehicles on ACV's online auction platform, as described herein;

c)     The RICO Defendants knew, agreed and intended that by Defendant Malchak engaging in the aforesaid shill bidding legitimate bidders such as the Plaintiffs and Class members would be deceived into believing that there was greater demand in the market for the Sun Auto vehicles being sold on the ACV auction platform than actually existed and would be unlawfully led to believe the market justified higher bids for the Sun Auto vehicles being sold on the ACV online auction platform;

d)     The RICO Defendants knew, agreed and intended that by causing the shill bidding described herein legitimate bidders such as the Plaintiffs and Class members would bid more than they would otherwise bid and pay more than they would otherwise pay for Sun Auto vehicles being sold on the ACV online auction platform.

95.     In violation of 18 U.S.C. § 1962(c), Defendants Neiman, Chamoun, Caputo and Magnuszewski have used ACV to engage in an ongoing and continuous practice of causing illegitimate shill bids to be placed on Sun Auto automobiles for the sole purpose of generating interest, enticing potential buyers to legitimately bid, and use the illusion of competitive bidding to raise the price of Sun Auto automobiles being sold on the ACV online auction platform, and the foregoing constitutes a pattern of "racketeering activity", as defined in 18 U.S.C. § 1961(c).

### B. Predicate Acts – Wire Fraud

96.     The aforesaid pattern of racketeering activity consists of wire fraud in violation of 18 U.S.C. § 1343.

97.     Specifically, by engaging in an intentional fraudulent scheme using shill bidding on the internet to entice legitimate bidders such as the Plaintiffs and Class members to bid on Sun Auto vehicles, which led to higher prices paid for Sun Auto vehicles, the conduct of the RICO Defendants violated 18 U.S.C. § 1343.

98.     Each of the RICO Defendants participated in devising and carrying out the fraudulent scheme described herein to have fake bidders use ACV online bidding accounts to make illegitimate bids for the sole purpose of generating interest in Sun Auto vehicles being auctioned on the ACV auction platform among legitimate bidders, such as the Plaintiffs and Class members.

99.     It was reasonably foreseeable to the RICO Defendants that the wires would be used in furtherance of the aforesaid scheme, and due to the use of the internet to operate the ACV online auction platform the wires were in fact used by the RICO Defendants to further and execute the scheme.

100.     The nature and pervasiveness of the above-described shill bidding on the ACV online auction platform necessarily entailed frequent and repeated wire transmissions and the precise dates of such transmissions relative to the sale of Sun Auto vehicles cannot be alleged without access to the books and records of ACV and Sun Auto.

101.     For the purpose of executing the aforesaid scheme, the RICO Defendants regularly transmitted, and caused to be transmitted by means of wire communication in interstate commerce, writings, electronic data and funds.

102.     The RICO Defendants utilized the wires for the purpose of furthering and executing the scheme; each electronic transmission in connection with shill bidding on

the sale of Sun Auto vehicles on the ACV online auction platform was incident to the scheme and each electronic transmission to cause, aid, abet and enable shill bidding on Sun Auto vehicles was a predicate act of wire fraud in that each wire transmission furthered and executed the scheme to defraud legitimate bidders such as the Plaintiffs and Class members.

103.   The RICO Defendants each participated in the scheme to defraud knowingly, willfully, and with a specific intent to entice legitimate bidders such as the Plaintiffs and Class members to bid on Sun Auto vehicles, and to bid more than they would otherwise bid, and pay more than they would otherwise pay for Sun Auto vehicles being sold on the ACV auction platform.

104.   The aforesaid ongoing predicate acts of wire fraud which occurred throughout the Class Period herein constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5); the predicate acts were not isolated events, but related acts aimed at the common goal of defrauding legitimate bidders such as the Plaintiffs and Class members and each of the RICO Defendants were common participants in the predicate acts.

## C. Injury to the Plaintiffs and Class Members

105.   As a direct and proximate result of the violations of 18 U.S.C. § 1962(c) by the RICO Defendants, the Plaintiffs and the Class members have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

106.   Under the above-described fraudulent scheme of the RICO Defendants, legitimate bidders such as the Plaintiffs and Class members needed to outbid the fake

shill bids being made on the Sun Auto vehicles on the ACV auction platform in order to become the successful bidder and purchaser of the vehicle.

107. Since the shill bidding on Sun Auto vehicles caused legitimate bidders to bid more than they would otherwise bid without the shill bidding, the direct, proximate and foreseeable result of the shill bidding scheme was to cause successful legitimate bidders to pay more than they would have otherwise paid for the Sun Auto vehicle using the ACV online platform, and the Plaintiffs and Class members were damaged by the excessive amounts paid for Sun Auto vehicles.

108. As a result of the aforesaid acts of the RICO Defendants in violation of 18 U.S.C. § 1962(c), under the provisions of 18 U.S.C. § 1964(c) the RICO Defendants are liable to the Plaintiffs and Class members for three (3) times the damages sustained, plus the costs of bringing this suit, including reasonable attorneys fees.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF SECTION 349 OF N.Y. GENERAL BUSINESS LAW**
**(NEW YORK SUBCLASS)**

109. Plaintiffs repeat and reallege paragraphs "1" through "108" as if fully set forth herein.

110. As stated above, being parties who use the ACV online auction platform to view, bid upon and purchase motor vehicles from Sun Auto, the Plaintiffs and New York Subclass members are consumers in the relevant market at issue in this action and, as such, the use of the ACV online auction to sell motor vehicles is a consumer-orientated transaction.

111.   The Defendants' repeated acts of deception directed at the broad group of individuals which are described herein causes consumer injury and harm to the public interest.

112.   In the same way that the Defendants' unlawful shill bidding practice was anticompetitive and violative of the antitrust laws, the practice was deceptive and materially misleading.

113.   In that connection, the aforesaid shill bidding practice is deceptive and materially misleading for reasons which include, without limitation, the following:

    a) When bidding on Sun Auto vehicles, legitimate bidders such as the Plaintiffs and New York Subclass members do not know the floor price of the Sun Auto vehicles while another purported bidder—Malchak—is wrongfully aware of the floor price;

    b) The Defendants' unlawful shill bidding practice puts legitimate bidders at an immediate disadvantage because such bidders are pre-determined to be outbid by the aforesaid improper Malchak shill bids, and such bidders do not know they are at a disadvantage due to the improper shill bids;

    c) Legitimate bidders do not know they are bidding against improper shill bids and do not know they will have to bid more they would otherwise bid and pay more than they would otherwise pay for Sun Auto vehicles due to the improper shill bids; and

    d) Due to the improper shill bids utilized in the Defendants' unlawful shill bidding practice, legitimate bidders are led to believe that there is greater

demand for the Sun Auto vehicle being auctioned than actually exists in the market and that such demand justifies higher bids.

114.   In being misled by the Defendants above-described conduct, the Plaintiffs and New York Subclass members acted reasonably under the circumstances in bidding for Sun Auto motor vehicles offered for sale on ACV's online auction platform during the Class Period.

115.   The Plaintiffs and New York Subclass members were damaged by the Defendants' aforesaid deceptive and misleading conduct in violation of Section 349 of the N.Y. General Business Law by being caused to bid more than they would otherwise bid and pay more than they would otherwise pay for Sun Auto vehicles.

116.   As a result of the aforesaid acts of the Defendants in violation of Section 349 of the N.Y. General Business Law, the Defendants should be found liable to the Plaintiffs and New York Subclass members for compensatory and punitive damages in an amount determined by the Court and reasonable attorneys fees.

## FIFTH CAUSE OF ACTION

### FRAUD BY CONCEALMENT

117.   Plaintiff's repeat and reallege paragraphs "1" through "116" as if fully set forth herein.

118.   When using the above-described unlawful shill bidding practice during the Class Period to offer Sun Auto vehicles for sale on ACV's online auction platform, the Defendants intentionally and wrongfully concealed from legitimate bidders such as the Plaintiffs and Class members that Defendant Malchak was wrongfully aware of the Sun

Auto floor price and was using that knowledge in making shill bids to wrongfully increase the bids of legitimate bidders.

119.   The Defendants also intentionally and wrongfully concealed from legitimate bidders that, in bidding against Malchak's improper shill bids, such bidders were at a disadvantage because:

      a) Any bids in an amount less than the improper shill bids were pre-determined to be unsuccessful, and

      b) In order to be successful, legitimate bidders would have to bid more than they would otherwise bid and pay more than they would otherwise pay for the Sun Auto vehicle.

120.   The Plaintiffs and Class members had no reason to know that shill bids were being made which were driving up the price of Sun Auto motor vehicles offered for sale during the bidding on the ACV online auction platform.

121.   Due to the Defendants' knowledge of essential facts concerning the shill bidding conduct described herein, the Defendants had a duty to disclose to legitimate bidders that the Sun Auto floor price had been disclosed to Malchak when the shill bidding practice was being employed on the ACV online auction because information relative to the fairness of the ACV online auction was crucial to the bidders' decision to participate in the ACV online auction.

122.   The Plaintiffs and Class members relied on the lack of any indication that the bidding was unfair in proceeding to bid on Sun Auto vehicles on the ACV online auction platform during the Class Period, and the Defendants concealment of the

improper shill bidding conduct rendered bidding on Sun Auto vehicles on the ACV online platform inherently unfair.

123.   The Plaintiffs and Class members were damaged by Defendants' fraudulent conduct by being caused to bid more than they would otherwise bid and pay more than they would otherwise pay for the Sun Auto vehicles being offered for sale, and by paying an excessive amount for the Sun Auto vehicles in relation to the fair market value of the vehicles.

124.   By reason of the Defendants' fraud, the Defendants should be found liable to the Plaintiffs and Class members in an amount not less than $5,000,000, plus punitive damages in an amount to be determined by the Court and reasonable attorneys fees.

**SIXTH CAUSE OF ACTION**
**AGAINST ACV AND SUN AUTO**

**UNJUST ENRICHMENT**

125.   Plaintiffs repeat and reallege paragraphs "1" through "124" as if fully set forth herein.

126.   In using the ACV online auction platform to view, bid upon and purchase vehicles from Sun Auto during the Class Period, the Plaintiffs and Class members entered into business relationships and completed business transactions with both ACV and Sun Auto.

127.   ACV and Sun Auto both knew and expected that the Plaintiffs and Class members would rely on the sales and auction information disclosed on the ACV auction platform in deciding whether to bid on Sun Auto vehicles and in fact were induced to make bids on Sun Auto vehicles.

128.   In completing the aforesaid business transactions with the Plaintiffs and Class members, the Defendants used the above-described unlawful, anticompetitive, deceptive and fraudulent means to extract excessive payments from the Plaintiffs and Class members for Sun Auto vehicles sold through ACV's online auction platform.

129.   The excessive payments include payments for Sun Auto motor vehicles that were greater than would have otherwise been paid without the Defendants' employment of the unlawful shill bidding practice described herein, and payments for Sun Auto vehicles at prices which exceed the fair market value of the vehicles purchased.

130.   Defendants ACV and Sun Auto have unlawfully and unjustly enriched themselves at the expense of the Plaintiffs and the Class members and it is against equity and good conscience to permit ACV and Sun Auto to retain said monies.

131.   Accordingly, by reason of the foregoing, ACV and Sun Auto should be required to reimburse the Plaintiffs and Class members for the monies wrongfully obtained and should be found liable in an amount not less than $5,000,000 plus reasonable attorneys fees.

WHEREFORE, the Plaintiffs respectfully request the following relief:

(a)   An Order pursuant to Rule 23 of the Federal Rules of Civil Procedure determining that this action may proceed as a Class Action with the Plaintiffs as Class Representatives;

(b)   A Judgement against the Defendants on behalf of the Plaintiffs and Class members under the First Cause of Action in an amount not less than $5,000,000, together with treble damages and reasonable attorneys fees;

(c)     A Judgement against the Defendants on behalf of the Plaintiffs and New York Subclass members under the Second Cause of Action in an amount not less than $5,000,000, together with treble damages and reasonable attorneys fees;

(d)     A Judgement against Defendants Neiman, Chamoun, Magnuszewski and Caputo under the Third Cause of Action for three (3) times the damages sustained by the Plaintiffs and Class members, plus the costs of bringing this suit, including reasonable attorneys fees;

(e)     A Judgement against the Defendants on behalf of the Plaintiffs and New York Subclass members under the Fourth Cause of Action for compensatory and punitive damages in an amount determined by the Court plus reasonable attorneys fees;

(f)     A Judgment against the Defendants on behalf of the Plaintiffs and Class members under the Fifth Cause of Action in an amount not less than $5,000,000, together with punitive damages in an amount determined by the Court plus reasonable attorneys fees;

(g)     A Judgment against Defendants ACV and Sun Auto on behalf of the Plaintiffs and Class members under the Sixth Cause of Action in an amount not less than $5,000,000, plus reasonable attorneys fees; and

(h)     Appropriate interest, the costs and disbursements of this action and such other and further relief the Court deems proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs respectfully request a jury trial of all matters so triable.


Dated:      July 7, 2021
           Amherst, New York

HOGANWILLIG, PLLC

By:   _____
Edward P. Yankelunas, Esq.
Corey J. Hogan, Esq.
Steven M. Cohen, Esq.
*Attorneys for Plaintiffs*
2410 North Forest Road, Suite 301
Amherst, New York 14068
Telephone: (716) 636-7600