UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JERRY GRADL MOTORS, INC., and LIFETIME
MOTOR CARS, INC., Individually and
On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

ACV AUCTIONS, INC., SUN CHEVROLET, INC.,
WHOLESALE CARS ONLINE.COM., L.L.C. d/b/a SUN
AUTO WAREHOUSE, WHOLESALE CARS ONLINE.COM,
L.L.C. d/b/a SUN AUTO WAREHOUSE OF CORTLAND and
BRIAN M. MALCHAK,

Defendants.

_____

**THIRD AMENDED
CLASS ACTION
COMPLAINT**

Civil Action No. 21-CV-409

Plaintiffs Jerry Gradl Motors, Inc. and Lifetime Motor Cars, Inc. (collectively the

"Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys

HoganWillig, PLLC, for their Third Amended Class Action Complaint herein alleges as

follows:

## NATURE OF THE CASE

1.      This is a class action brought pursuant to Rule 23 of the Federal Rules of

Civil Procedure asserting claims under the Sherman Act (15 U.S.C. § 1), the Clayton Act

(15 U.S.C. § 15), the Donnelly Act (Section 340 of N.Y. General Business Law), Section

349 of the N.Y. General Business Law and the common law. The aforementioned claims

arise from the Defendants' wrongful conduct of employing a shill bidding practice in which

the Defendants used an online automobile auction platform to knowingly cause bidders

such as the Plaintiffs and Class members to bid and pay more than they otherwise would

for motor vehicles offered for sale using the aforementioned online auction platform and to improperly raise prices and impair competition in the relevant market.

## PARTIES

2.      Plaintiff Jerry Gradl Motors, Inc. ("Gradl") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 711 Niagara Falls Boulevard, North Tonawanda, New York.

3.      Plaintiff Lifetime Motor Cars, Inc. ("Lifetime Motor Cars") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 261 Mill Street, East Aurora, New York.

4.      Upon information and belief, ACV Auctions, Inc. ("ACV") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 640 Ellicott Street, Buffalo, New York.

5.      Upon information and belief, Defendant Sun Chevrolet, Inc. ("Sun Auto") is a corporation organized and existing under the laws of the State of New York with its principal offices located at 104 West Genesee Street, Chittenango, New York.

6.      Upon information and belief, Defendant Wholesale Cars Online.Com, L.L.C. is a limited liability company organized and existing under the laws of the State of New York with its principal offices located at 7966 Indian Hill Road, Manlius, New York, doing business under the name Sun Auto Warehouse at 8010 Brewerton Road, Cicero, New York ("Sun Auto").

7.      Upon information and belief, Defendant Wholesale Cars Online.Com, L.L.C. is a limited liability company organized and existing under the laws of the State of New York with its principal offices located at 7966 Indian Hill Road, Manlius, New York also

2

doing business as Sun Auto Warehouse of Cortland at 3861 West Road, Cortland, New York ("Sun Auto").[1]

8.      Upon information and belief, Defendant Brian M. Malchak ("Malchak") is a natural person residing at 2272 Ridge Road, McGraw, New York.

## JURISDICTION

9.      Jurisdiction is in the United States District Court pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1, 15 U.S.C. § 15 and the Court's supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1367 for the Plaintiffs' and New York Subclass members' State claims herein.

## VENUE

10.     Venue for this action is proper in the Western District of New York pursuant to 28 U.S.C. 1391(b)(2) being the judicial district in which a substantial part of the events giving rise to the claims herein occurred.

## STATEMENT OF FACTS

11.      ACV offers an online platform to enable used car dealers to view, bid upon and purchase an inventory of automobiles and other motor vehicles through an online auction.

12.      The ACV online auction lasts a maximum of twenty (20) minutes for each automobile or other motor vehicle offered for sale to allow bidders to place bids for any particular vehicle using ACV's services and the ACV platform software allows the seller to establish the minimum price (hereinafter the "floor price") at which the vehicle can be

---

[1] Sun Chevrolet Inc., Wholesale Cars Online.Com L.L.C. d/b/a Sun Auto Warehouse and Wholesale Cars Online.Com, L.L.C. d/b/a Sun Auto Warehouse of Cortland are hereinafter referred to collectively in this Third Amended Class Action Complaint as "Sun Auto".

automatically sold to a buyer during the auction; all legitimate bidders are unaware of the floor price.

13.     If a bid placed by a bidder exceeds the seller's floor price within the twenty (20) minute auction for a vehicle, the software for the ACV online system facilitates an automatic sale to the highest bidder whose bid exceeds the seller's floor price.

14.     As the bidding proceeds, if a bid is submitted which is surpassed by a competing bid, the ACV online system advises the bidder that the bid is unsuccessful and that the bidder has been outbid.

15.     In addition, when the bidding (with or without shill bidding) does not go above the floor price, the seller has the option to accept the highest bid and the seller also has the option to make a counteroffer at the floor price or to make a counteroffer below the floor price; in those circumstances ACV would sometimes facilitate (i.e. "broker") a transaction between the seller and buyer with live communications.

16.     The software for the ACV auction platform permits a bidder to make a proxy bid for a particular vehicle at a specified price prior to the beginning of the auction and all legitimate bidders are unaware of the bidder's proxy bid.

17.     Sun Auto are automobile dealers which used ACV's online services to sell used automobiles and other motor vehicles to dealers and any other parties who utilized the ACV online auction platform.

18.     During the Class Period (January 2015 through June 2019), the Plaintiffs and Class members used ACV's online auction services to purchase automobiles and other vehicles from Sun Auto for their business inventory; during the Class Period, the

{H3328958.1}                                        4

Plaintiffs and Class members also made wholesale sales of used automobiles and other vehicles.

19.     Defendant Malchak is a used car dealer in the Syracuse area who had a business association with Sun Auto and a business association with Sun Auto employee Dominick (D.J.) Mollica; using the above-described ACV online auction platform and by prior agreement with ACV and Sun Auto, during the Class Period Malchak participated in the shill bidding activities with ACV and Sun Auto described below.

20.     If the ACV online auction is successful and results in the sale of a vehicle, ACV earns a fee from both the buyer and seller, with the buyer's fees being variable based on the price of the vehicle and the seller's fee being a fixed auction fee and an optional fee for a vehicle condition report.

21.     With knowledge and agreement that that shill bidding described herein on sales of Sun Auto vehicles was being conducted on the ACV auction platform, ACV management personnel – including ACV co-founder Joseph Nieman ("Nieman") and director of inside sales James Honsberger – approved the waiver of the Sun Auto seller's fees to induce Sun Auto to use the ACV platform for sales.

22.     Upon information and belief, by prior agreement with ACV and Sun Auto, the Sun Auto floor price of the vehicle being offered for sale by Sun Auto using the ACV online platform was disclosed to Malchak and, with knowledge of that information, Malchak presented a phantom proxy bid at a price below the floor price for the purpose of causing competing bids to increase (i.e. "shill up") with no intention of purchasing the motor vehicle being offered for sale by Sun Auto.

23. As legitimate bidders placed bids while the Malchak proxy bid was in place, bids at any price below the Malchak bid price were automatically outbid by Malchak and such unsuccessful bidders were advised they had been outbid by the ACV online platform software.

24. Upon information and belief and in the alternative, Malchak combined his use of the aforesaid phantom proxy bids with live bids made without the intention to purchase vehicles and for the purpose of "shilling up" bid prices (the foregoing are collectively referred to herein as Malchak's "shill bids").

25. In order to outbid the Malchak shill bids and purchase the vehicles being offered for sale by Sun Auto on the ACV online platform, bidders including the Plaintiffs and Class Members had to bid at prices higher than they would otherwise bid, and such purchasers of the vehicles would have to pay a price higher than they would otherwise pay without the Malchak shill bids.

26. Defendant Malchak and Sun Auto employee D.J. Mollica ("Mollica") engaged in shill bidding on sales of Sun Auto cars using the ACV auction platform. As noted above, the seller's floor price is information which is unavailable to any legitimate bidder. Malchak used his relationships with Sun Auto, Sun Auto owner Todd J. Caputo and Mollica to obtain the Sun Auto floor price in order to make shill bids on the ACV platform; ACV's records show that Sun Auto employees in addition to D.J. Mollica were also engaged in shill bidding with Malchak on the ACV auction platform, which is information all ACV management personnel would have had knowledge of through access to ACV's auction records.

27.     The fact that Malchak was shill bidding on vehicles being sold by Sun Auto on the ACV online auction platform and had no intention of purchasing the vehicles he was purportedly bidding on is confirmed by the parties' conduct described herein.

28.     In that regard, as noted above, if bidding on a specific vehicle does not reach the seller's floor price during the ACV auction, the seller has the option to accept the highest bid and the seller also has the option to make a counteroffer at the floor price or to make a counteroffer below the floor price; in addition, upon information and belief, with knowledge and agreement that shill bidding was being effectuated on sales of Sun Auto vehicles, ACV sometimes "brokered" the transaction when bids were below the floor with live communications between the buyer and the seller.

29.     On many occasions during the Class Period – including numerous transactions in direct succession – Malchak was the high bidder on Sun Auto vehicles which did not automatically sell on the ACV auction platform and Malchak declined the Sun Auto counteroffer to purchase the Sun Auto vehicle at the floor price, or an amount below the floor price; the obvious reason for the foregoing is that Malchak was shill bidding on Sun Auto vehicles without any intention to purchase the vehicles.

30.     The documents attached as **Exhibit "A"** are ACV records that list auctions in 2018 and 2019 in which a Sun Auto dealership (Used Car King of Cicero - Seller's Dealership Acct. No. 1297) is the seller. The three-page document lists Sun Auto employees Dominic Mollica, Larry Chilton or Peter Detor as the seller and Brian M. Malchak as the buyer. For each of the thirty-two (32) transactions listed, the document states "Counter Original Declined No Sale", which means that Malchak was the high

bidder for the referenced automobile but did not proceed with the sale after a counteroffer was made by the Sun Auto dealership.

31.     The documents attached as **Exhibit "B"** are also ACV records for transactions in which Sun Auto dealership Used Car King of Cicero was the dealership offering the automobile for sale. Sun Auto employee Peter Detor was listed as the seller and Malchak listed as the buyer.  Again, for the fifty-eight (58) transactions listed, the document states "Counter Original Declined No Sale" for all but two (2) of the transactions, which means that Malchak was the high bidder but did not proceed with a purchase after the seller's counteroffer on all but two (2) of the transactions.

32.     The documents attached as **Exhibit "C"** are also ACV records. For the three (3) referenced Sun Auto dealerships (Sun Chevrolet – Seller's Dealership No. 1889, Use Car King of Cicero - Seller's Dealership No. 1297 and Used Car King of Cortland – Seller's Dealership No. 1890) the documents record transactions between October 1, 2016 and May 12, 2021 in which Malchak was the high bidder and either (a) purchased the vehicle or (b) declined to purchase the vehicle.

33.     The aforementioned ACV auction records attached as Exhibits show the following for the referenced Sun Auto dealerships:

- Sun Chevrolet – As high bidder Malchak purchased fourteen (14) cars and declined to purchase 359 cars.

- Used Car King of Cicero – As high bidder Malchak purchased thirty-one (31) cars and declined to purchase 352 cars.

- Used Car King of Cortland – As high bidder Malchak purchased twelve (12) cars and declined to purchase 195 cars.

• Of the 963 cars being auctioned, as high bidder Malchak only purchased a total of fifty-seven (57), which is 6% of the total.

34. ACV had the right and technological ability to suspend or terminate a bidder's auction account upon learning of bidding irregularities involving the use of the bidder's account, such as the aforesaid irregularities involving Malchak's bidding account.

35. Upon information and belief, in addition to having data which gave ACV reason to believe Malchak's account was being used to engage in bidding irregularities, ACV management personnel were specifically advised of Malchak's bidding irregularities by an ACV employee and did not suspend or terminate Malchak's account, nor take any action in reference to Malchak's bidding account; the foregoing indicates that ACV was aware of Malchak's bidding irregularities and agreed to permit the same to continue.

36. Indeed, upon being advised of the improper shill bidding activity of Defendants Malchak and Sun Auto by the aforementioned ACV employee, high level ACV executive James Honsberger responded to the ACV employee by saying "leave that issue alone" and "drop it for your own good."

37. It was ACV's overriding business goal throughout the above-described Class Period – and through the present date – to generate the highest possible sale price for each vehicle offered for sale on its online auction platform; this goal and the pressure created by ACV's management at the highest levels led to the widespread use of unethical methods (regardless of legal concerns), including the online shill bidding described in this Complaint.

38. Shill bidding was a pervasive practice at ACV; not only was shill bidding openly encouraged by ACV management, including ACV's co-founder Nieman, many

{H3328958.1}                                9

ACV management personnel had "dummy" bidding accounts that were used to make their own shill bids on ACV's online auction platform.

39.     In executing ACV's shill bidding practice, Neiman and other high level ACV executives would contact persons with ACV bidding accounts to advise that ACV needed a "bump" or "help" on an online ACV auction where bidding activity was low in order to generate bidding and increase prices; the "bump" and "help" referenced was shill bidding.

40.     Shill bidding was so pervasive and such a common practice at ACV that new employees were warned against bidding in live online auctions on the ACV auction platform because the auction could involve shill bidders improperly raising the price of the vehicle being sold.

41.     A clear indication of the acceptance of shill bidding as a common and ongoing business practice at ACV is the fact that ACV management at the highest levels personally participated in shill bidding on ACV's online auction platform.

42.     Specifically, Neiman had a personal app which he used to engage in shill bidding on the ACV online auction platform; the app allowed Neiman to see the seller's floor price which is never disclosed to legitimate bidders such as the Plaintiffs and Class members.

43.     Upon information and belief, Neiman's personal bidding app was developed by or with the assistance of ACV's Chief Technology Officer, Daniel Magnuszewski.

44.     In addition, Neiman used internal ACV information – including the floor price of the vehicles being sold – to purchase vehicles on the ACV auction platform for an automobile sales company separate from ACV which was owned by Neiman personally.

45. Although shill bidding was clearly used when Sun Auto vehicles were being auctioned on the ACV auction platform through the unlawful and fraudulent conduct described herein, shill bidding was not limited to the sales of Sun Auto vehicles.

46. In fact, upon information and belief, it is estimated that shill bidding was used on ACV's online auction sales for approximately one-half of the automobile dealers who used the ACV auction platform to sell used cars.

47. Shill bidding was a continuous and repeated practice utilized by ACV and Sun Auto for auction transactions involving the sale of Sun Auto vehicles on the ACV online auction platform.

48. In that connection, as stated above (Pars. 30-33, Exs. "A", "B", and "C"), Defendant Malchak used shill bidding on Sun Auto sales of at least 906 Sun Auto vehicles on the ACV auction platform (that is the number of sales where Malchak was the high bidder but declined to purchase the vehicle).

49. Furthermore, upon information and belief, in addition to shill bidding being a regular practice on ACV's online auction platform which caused financial damage to legitimate bidders such as the Plaintiffs and Class members in this case, the practice was financially damaging to ACV employees who lost the benefit of sales transactions if bids on those sales did not meet the improper shill price, and ACV vigorously discouraged any complaints by ACV employees about the ongoing shill bidding practice.

50. The shill bidding practice described herein was predicated on wrongful conduct of the Defendants fraudulently concealed from legitimate bidders including the Plaintiffs and Class Members who used the ACV interstate online auction platform during the Class Period and constituted continuing violations of the statutes described herein

during the Class Period, and continuing fraudulent and inequitable conduct described herein during the Class Period.

## **CLASS ACTION ALLEGATIONS**

51.    The Plaintiffs bring this action on behalf of themselves and all other similarly-situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class: Any bidders using the ACV online auction platform during the Class Period (January 2015 through June 2019) who bid on motor vehicles being offered for sale by Sun Auto without knowledge of the Sun Auto floor price while Malchak made improper shill bids on the same motor vehicle with prior knowledge of the Sun Auto floor price. The aforesaid Class includes (a) successful bidders who purchased the motor vehicle and bidders who placed unsuccessful bids and (b) businesses such as the Plaintiffs in this case who sold used vehicles on a wholesale basis during the Class Period and were therefore competitors of ACV who were adversely affected by the anticompetitive activity described herein.

52.    The Plaintiffs also seek certification of the following New York Subclass pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure: Any bidders placing bids from locations within the State of New York using the ACV online auction platform during the Class Period who bid on motor vehicles being offered for sale by Sun Auto without knowledge of the Sun Auto floor price while Malchak made improper shill bids on the same motor vehicles with prior knowledge of the Sun Auto floor price. The aforesaid Subclass includes (a) successful bidders who purchased the motor vehicle and bidders who placed unsuccessful bids and (b) businesses such as the Plaintiffs in this case who sold used vehicles on a wholesale basis during the Class Period and were

therefore competitors of ACV who were adversely affected by anticompetitive activity described herein.

53.    **Numerosity.** The Classes are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiffs have reason to believe that there are hundreds of members of the Class.  Class members may be identified through objective means and notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

54.    **Commonality and Predominance.** This action involves common questions or law and fact that predominate over any questions affecting individual Class members. These common questions include, but are not limited to:

a) Whether the Defendants entered into an agreement to use the shill bidding on the ACV online platform to cause Class members to bid more than they would otherwise bid on motor vehicles offered for sale by Sun Auto and to pay more than they would otherwise pay for motor vehicles sold by Sun Auto using the ACV online platform;

b) Whether by entering into and knowingly participating in the aforesaid agreement the Defendants put bidders at a disadvantage and through anticompetitive pricing adversely affected competition in the wholesale used auto sale market and thereby engaged in an illegal antitrust practice;

c) Whether the Defendants deceived the Class members by concealing that Malchak made improper shill bids on motor vehicles being offered for sale by Sun Auto with prior knowledge of the Sun Auto floor price; and

{H3328958.1}                                                                                        13

d) Whether members of both Classes were damaged by the Defendants' anti-competitive, deceptive and fraudulent conduct.

55. **Typicality.** The Plaintiffs are typical of members of both Classes. The Plaintiffs are used car dealers located in New York State who use the ACV online auction platform to view, bid upon, and purchase automobiles and other motor vehicles offered for sale by Sun Auto during the Class Period, which is the time period Malchak was making the above-described improper shill bids on motor vehicles offered for sale by Sun Auto, and the Plaintiffs were injured by bidding more than they would otherwise bid and paying more than they would otherwise pay for vehicles offered for sale by Sun Auto because it was necessary to out-bid Malchak's improper shill bids. As competitors of Sun Auto and ACV who sell used cars on a wholesale basis, the Plaintiffs were adversely affected by the anticompetitive pricing caused by the shill bidding on the ACV auction platform.

56. **Adequacy.** The Plaintiffs are adequate representatives of both Classes because Plaintiffs are members of both Classes and are committed to pursuing this matter to obtain relief for themselves and for both Classes. The Plaintiffs have no conflicts of interest with either Class. Plaintiffs have also retained counsel competent and experienced in complex class action litigation. The Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Classes.

57. **Superiority.** Class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The primary purpose of the class action mechanism is to permit litigation against wrongdoers even when

{H3328958.1}                                                14

damages to the individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by the Plaintiffs and the Class members may be relatively small compared to the burden and expense required to individually litigate their claims against the Defendants and, therefore, individual litigation to redress the wrongful conduct of the Defendants would be impracticable. Individual litigation by each Class member would also strain the Court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the Court system. By contrast, the class action mechanism presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single Court.

## FIRST CAUSE OF ACTION

### VIOLATION OF SHERMAN ACT
### AND CLAYTON ACT

58.     Plaintiffs repeat and reallege paragraphs "1" through "57" as if fully set forth herein.

59.     The relevant market in the present case consists of ACV providing a digital wholesale auction marketplace through an online platform to facilitate business-to-business used vehicle sales between a selling dealership ad a buying dealership. Customers using the digital wholesale marketplace are licensed automotive dealerships or other commercial enterprises. The aforesaid digital auction is offered to customers in a 20-minute live auction which facilitates instant sales transactions of wholesale vehicles using multiple online platforms, including mobile apps, web and through API integration.

60.     According to ACV News Release Details, as of January 25, 2019, ACV was expecting to "continue its explosive nationwide growth to over 140 territories in 2019." ACV also states that on that date "ACV operate[d] in 85 markets coast to coast, up from 20 markets at the start of 2018."

61.     According to further ACV News Release Details issued on September 17, 2019, as of that date (approximately 3 months after the close of the Class period herein), "ACV [was then] operat[ing] in 138 territories extending from coast to coast . . . [and] '"we continue to grow rapidly across the country.'"

62.     Therefore, according to ACV's own public press releases, throughout all of 2019 through the end of the Class Period in this case (June 2019), the geographic market for the above-described digital auction marketplace offered by ACV (Par. 59) was the continental United States; furthermore, upon information and belief and according to ACV's January 25, 2019 above-referenced New Release Details, ACV's operations were expanding "coast to coast" across the United States and were operating "coast to coast" during some or all of 2018.

63.     The graph set forth below is presented to show ACV's share of the Wholesale Auto Market for used vehicles in the years listed through December 31 (the reference to "ACV Marketplace Units" means used vehicles sold on ACV's digital marketplace described above in Par. 59):

| Total Wholesaled Units | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2016 | | 2017 | | 2018 | | 2019 | |
| Total Wholesaled | 15,500,000 | | 15,900,000 | | 16,400,000 | | 16,600,000 | |
| At physical auctions | 9,900,000 | 64% | 10,000,000 | 63% | 9,800,000 | 60% | 9,600,000 | 58% |
| Commercial Direct-to-consumer | 600,000 | 4% | 600,000 | 4% | 700,000 | 4% | 700,000 | 4% |
| Dealer-to-dealer | 4,100,000 | 26% | 4,300,000 | 27% | 4,700,000 | 29% | 4,900,000 | 30% |
| Offsite/Online | 900,000 | 6% | 1,000,000 | 6% | 1,200,000 | 7% | 1,400,000 | 8% |
| | | | | | | | | |
| ACV Marketplace Units | 5,000 | 0.6% | 24,000 | 2.4% | 90,128 | 7.5% | 241,477 | 17.2% |
| Geographic Markets/Territories | | | 30 | | 80 | | 140 | |

64.     In showing ACV's share of online auction sales as of December 31 for 2016

through 2019, the graph set forth above shows ACV's market share for online auction

sales of used vehicles for most of the Class Period herein (January 2015 through June

2019).

65.     Furthermore, the graph set forth above specifically shows ACV's annual

online auction sales as of December 31, 2018 (90,128) and December 31, 2019 (241,477)

and ACV's national share of online auction sales on those dates: 7.5% as of December

31, 2018 and 17.2% as of December 31, 2019; therefore, ACV's market share of the

national online auction sales of used cars at the conclusion of the Class Period in the

instant case (June 2019) was a share between 7.5% and 17.2%.

66.     In addition, inasmuch as physical auction sales and dealer-to-dealer sales

of used cars on a wholesale basis are a reasonable substitute for online auction sales for

wholesale inventory which is interchangeable with online auction transactions, the above

graph is presented to show ACV's share of the entire wholesale market for used vehicles;

for example, as shown by the graph, as of December 31, 2018, the annual total of online

auction sales (1,200,000) was 7% of the annual total of all wholesale sales for used

vehicles (16,400,000) and, on that date, ACV's share of the annual total of online auction sales (90,128) was 7.5% of such online sales.

67.    By agreeing to engage in the unlawful shill bidding combination described above, the Defendants have engaged in an illegal anticompetitive practice which requires legitimate bidders including the Plaintiffs and Class members to make bids which exceed Malchak's improper shill bids in order to purchase the motor vehicles being offered for sale by Sun Auto on the ACV auction platform.

68.    When bidding on Sun Auto vehicles, legitimate bidders including the Plaintiffs and Class members do not know the floor price of the Sun Auto vehicles being auctioned on the ACV online platform, and do not know that another purported bidder – Malchak – does know the Sun Auto floor price.

69.    The aforesaid shill bidding practice is inherently unfair and puts legitimate bidders such as the Plaintiffs and Class members at an immediate disadvantage because such bidders are pre-determined to be outbid by the improper Malchak shill bids, causing the legitimate bids below the Malchak shill bids to have no possibility of being successful.

70.    The aforesaid shill bidding practice is anticompetitive and violative of the antitrust laws because it unlawfully drives up the prices for the vehicles being sold since it requires legitimate bidders including the Plaintiffs and the Class members to bid more than they would otherwise bid without the improper shill bids of Malchak for Sun Auto motor vehicles being auctioned on the ACV online platform.

71.    The aforesaid shill bidding practice is similarly anticompetitive and violative of the antitrust laws because it requires legitimate bidders including the Plaintiffs and

Class members whose bids are successful to pay more than they would otherwise pay for the Sun Auto motor vehicles being auctioned on the ACV online platform.

72. Knowing legitimate bidders such as the Plaintiffs and Class members must out-bid Malchak's improper shill bids to be successful, which results in the legitimate bidding to be "shilled up" (i.e., to drive up the price), upon information and belief, when improper shill bids are being submitted by Malchak the prices for Sun Auto vehicles on the ACV online platform were set artificially high in relation to the fair market value.

73. Upon information and belief, when Sun Auto vehicles were sold on the ACV online platform when improper shill bids were submitted by Malchak, the revenue received by Sun Auto for each vehicle sold was higher than the revenue which would have been received without the Malchak shill bids.

74. Furthermore, upon information and belief, in addition to Sun Auto being ACV's largest customer using ACV's online auction platform to sell vehicles during the Class Period, Sun Auto was an investor in ACV and, therefore, Sun Auto and ACV shared a common interest in increasing the revenue received through the above-described anticompetitive shill bidding practice.

75. The Defendants' above-described shill bidding practice is not only anticompetitive and unlawful because it causes legitimate bidders to bid and pay more than they would otherwise pay for Sun Auto vehicles, the practice is also anticompetitive and unlawful because it causes bidders including the Plaintiffs and Class members to believe that there is greater demand for the Sun Auto vehicles then actually exists in the above-described wholesale market for used vehicles.

76.    Upon being deceived into believing there is greater demand for the vehicles than actually exists in the aforesaid market, bidders are unlawfully led to believe that the market justifies higher bids for the Sun Auto vehicles being auctioned on the ACV online platform.

77.    In addition to buying used vehicles on a wholesale basis through the ACV online auction platform to establish inventory, as stated above, the Plaintiffs and Class Members sell used vehicles on a wholesale basis and are therefore competitors of Sun Auto and ACV in the wholesale market for used vehicles.

78.    Artificially and wrongfully increasing the price of used vehicles sold for Sun Auto on the ACV online auction platform through the shill bidding described herein constitutes anticompetitive conduct which has an adverse effect on competition in the above-described market in which ACV operates.

79.    In that connection, as ACV states in its own Form 10-K filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2021 (page 19), used vehicle prices affect the volume of used vehicles entered for sale in the used vehicle wholesale market and the demand for those vehicles.

80.    In particular, as stated in ACV's Form 10-K, when used vehicles prices are high, used vehicle dealers may sell more of their trade-in vehicles on a retail basis which reduces the volume of used vehicles to be sold on a wholesale basis. Competitors are also adversely affected by shill bidding because higher prices for specific vehicle models and years will attract dealers and reduce sales opportunities for such vehicles that would otherwise be available in the wholesale used vehicle market.

81.     The excessive amount paid by the Plaintiffs and Class members for Sun Auto vehicles unlawfully sold using the ACV online auction due to the above-described anticompetitive shill bidding practice is the actual injury sustained by the Plaintiffs and Class members as buyers of vehicles and is injury of the type the antitrust laws were intended to prevent.

82.     Furthermore, damage due to the adverse effect on competition for sales in the above-described wholesale market for used vehicles, including a reduction in sales, is the further actual injury sustained by Plaintiffs and Class Members as competitors of Sun Auto and ACV and is injury of the type the antitrust laws were intended to prevent.

83.     Moreover, as victims of the Defendants' illegal anticompetitive conduct whose claims are typical of the members of both Classes herein, the Plaintiffs are efficient enforcers of the antitrust laws being vindicated and enforced in this action for reasons which include, without limitation, the following:

   a) The Plaintiffs and Class members have sustained direct damages consisting of the excessive amounts bid and paid for Sun Auto vehicles sold using the ACV online auction platform and a reduction in sales through the above-described adverse impact on competition when operating as competitors of Sun Auto and ACV in the above-described wholesale market for used vehicles;

   b) Being bidders who bid on vehicles being sold through the ACV online auction platform and competitors of Sun Auto and ACV in the relevant market during the Class Period and suffered damages as a result, the Plaintiffs and Class members are an identifiable group whose self-interest in a recovery motivates them to vindicate the public interest in antitrust enforcement; and

c) The infliction of damages on the Plaintiffs and Class members is a certainty which can be ascertained and calculated using their own business records, business records of ACV and Sun Auto, and publicly available market information reflecting the fair market value of the Sun Auto vehicles sold using the ACV online auction platform during the Class Period.

84.     By reason of having engaged in the above-described anticompetitive shill bidding practice, the Defendants have engaged in illegal conduct in restraint of trade consisting of a violation of Section 1 of the Sherman Act (15 U.S.C. §1) under the "rule of reason." See, *Leegin Creative Leather Prods. v. PSKS, Inc.,* 551 U.S. 877 (2007).

85.     The Plaintiffs and Class members herein have "antitrust standing" pursuant to Section 4 of the Clayton Act (15 U.S.C. §15) both by being persons or entities "injured in [their] business or property by reason of . . . [acts] . . . forbidden in the antitrust law" and by virtue of being persons or entities having suffered damage directly attributable to an anticompetitive aspect of the above-described shill bidding practice.

86.     As a result of the aforesaid acts of the Defendants in violation of the antitrust laws, the Defendants should be found liable to the Plaintiffs and Class members an amount not less than of $5,000,000, together with treble damages and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
## VIOLATION OF DONNELLY ACT
## (NEW YORK SUBCLASS)

87.     Plaintiffs repeat and reallege paragraphs "1" through "86" as if fully set forth herein.

88.    As parties who use the ACV online auction platform to purchase motor vehicles from Sun Auto to acquire their inventory of used automobiles and other vehicles, as well as being parties who sell used vehicles on the wholesale market, the Plaintiffs and Class members are consumers and competitors in the relevant market at issue in this action.

89.    Moreover, the above-described agreement among the Defendants to engage in the aforesaid illegal shill bidding practice constitutes an unlawful combination in restraint of trade in violation of the Donnelly Act.

90.    Claims under the Donnelly Act are interpreted in the same manner as federal antitrust claims under the Sherman Act and the New York State antitrust claims asserted in the instant Cause of Action are premised on the same factual allegations as the claims under the Sherman Act set forth in the preceding Cause of Action herein.

91.    Therefore, the allegations in the preceding Cause of Action giving rise to the Plaintiffs' claims against the Defendants under the Sherman Act and Clayton Action are respectfully incorporated and repeated herein in the instant Cause of Action.

92.    As a result of the aforesaid acts of the Defendants in violation of the Donnelly Act, the Defendants should be found liable to the Plaintiffs and New York Subclass members in an amount not less than $5,000,000, together with treble damages and reasonable attorneys fees.

{H3328958.1}                                                    23

## THIRD CAUSE OF ACTION

## VIOLATION OF SECTION 349 OF N.Y. GENERAL BUSINESS LAW
## (NEW YORK SUBCLASS)

93.     Plaintiffs repeat and reallege paragraphs "1" through "92" as if fully set forth herein.

94.     As stated above, being parties who use the ACV online auction platform to view, bid upon and purchase motor vehicles from Sun Auto, the Plaintiffs and New York Subclass members are consumers in the relevant market at issue in this action and, as such, the use of the ACV online auction to sell motor vehicles is a consumer-orientated transaction.

95.     The Defendants' repeated acts of deception directed at the broad group of individuals which are described herein causes consumer injury and harm to the public interest.

96.     In the same way that the Defendants' unlawful shill bidding practice was anticompetitive and violative of the antitrust laws, the practice was deceptive and materially misleading.

97.     In that connection, the aforesaid shill bidding practice is deceptive and materially misleading for reasons which include, without limitation, the following:

> a)  When bidding on Sun Auto vehicles, legitimate bidders such as the Plaintiffs and New York Subclass members do not know the floor price of the Sun Auto vehicles while another purported bidder—Malchak—is wrongfully aware of the floor price;

b) The Defendants' unlawful shill bidding practice puts legitimate bidders at an immediate disadvantage because such bidders are pre-determined to be outbid by the aforesaid improper Malchak shill bids, and such bidders do not know they are at a disadvantage due to the improper shill bids;

c) Legitimate bidders do not know they are bidding against improper shill bids and do not know they will have to bid more they would otherwise bid and pay more than they would otherwise pay for Sun Auto vehicles due to the improper shill bids; and

d) Due to the improper shill bids utilized in the Defendants' unlawful shill bidding practice, legitimate bidders are led to believe that there is greater demand for the Sun Auto vehicle being auctioned than actually exists in the market and that such demand justifies higher bids.

98.    In being misled by the Defendants above-described conduct, the Plaintiffs and New York Subclass members acted reasonably under the circumstances in bidding for Sun Auto motor vehicles offered for sale on ACV's online auction platform during the Class Period.

99.    The Plaintiffs and New York Subclass members were damaged by the Defendants' aforesaid deceptive and misleading conduct in violation of Section 349 of the N.Y. General Business Law by being caused to bid more than they would otherwise bid and pay more than they would otherwise pay for Sun Auto vehicles.

100.    As a result of the aforesaid acts of the Defendants in violation of Section 349 of the N.Y. General Business Law, the Defendants should be found liable to the

Plaintiffs and New York Subclass members for compensatory and punitive damages in an amount determined by the Court and reasonable attorneys fees.

## FOURTH CAUSE OF ACTION

## FRAUD BY CONCEALMENT

101.   Plaintiff's repeat and reallege paragraphs "1" through "100" as if fully set forth herein.

102.   When using the above-described unlawful shill bidding practice during the Class Period to offer Sun Auto vehicles for sale on ACV's online auction platform, the Defendants intentionally and wrongfully concealed from legitimate bidders including the Plaintiffs and Class members that Defendant Malchak was wrongfully aware of the Sun Auto floor price and was using that knowledge in making shill bids to wrongfully increase the bids of legitimate bidders.

103.   The Defendants also intentionally and wrongfully concealed from legitimate bidders that, in bidding against Malchak's improper shill bids, such bidders were at a disadvantage because:

> a) Any bids in an amount less than the improper shill bids were pre-determined to be unsuccessful, and
>
> b) In order to be successful, legitimate bidders would have to bid more than they would otherwise bid and pay more than they would otherwise pay for the Sun Auto vehicle.

104.    The Plaintiffs and Class members had no reason to know that shill bids were being made which were driving up the price of Sun Auto motor vehicles offered for sale during the bidding on the ACV online auction platform.

105.    Due to the Defendants' knowledge of essential facts concerning the shill bidding conduct described herein, the Defendants had a duty to disclose to legitimate bidders including the Plaintiffs and Class Members that the Sun Auto floor price had been disclosed to Malchak when the shill bidding practice was being employed on the ACV online auction because information relative to the fairness of the ACV online auction was crucial to the bidders' decision to participate in the ACV online auction.

106.    The Plaintiffs and Class members relied on the lack of any indication that the bidding was unfair in proceeding to bid on Sun Auto vehicles on the ACV online auction platform during the Class Period, and the Defendants concealment of the improper shill bidding conduct rendered bidding on Sun Auto vehicles on the ACV online platform inherently unfair.

107.    The Plaintiffs and Class members were damaged by Defendants' fraudulent conduct by being caused to bid more than they would otherwise bid and pay more than they would otherwise pay for the Sun Auto vehicles being offered for sale, and by paying an excessive amount for the Sun Auto vehicles in relation to the fair market value of the vehicles.

108.    By reason of the Defendants' fraud, the Defendants should be found liable to the Plaintiffs and Class members in an amount not less than $5,000,000, plus punitive damages in an amount to be determined by the Court and reasonable attorneys fees.

{H3328958.1}                                      27

## FIFTH CAUSE OF ACTION
## AGAINST ACV AND SUN AUTO

### UNJUST ENRICHMENT

109.    Plaintiffs repeat and reallege paragraphs "1" through "108" as if fully set forth herein.

110.    In using the ACV online auction platform to view, bid upon and purchase vehicles from Sun Auto during the Class Period, the Plaintiffs and Class members entered into business relationships and completed business transactions with both ACV and Sun Auto.

111.    ACV and Sun Auto both knew and expected that the Plaintiffs and Class members would rely on the sales and auction information disclosed on the ACV auction platform in deciding whether to bid on Sun Auto vehicles and in fact were induced to make bids on Sun Auto vehicles.

112.    In completing the aforesaid business transactions with the Plaintiffs and Class members, the Defendants used the above-described unlawful, anticompetitive, deceptive and fraudulent means to extract excessive payments from the Plaintiffs and Class members for Sun Auto vehicles sold through ACV's online auction platform.

113.    The excessive payments include payments for Sun Auto motor vehicles that were greater than would have otherwise been paid without the Defendants' employment of the unlawful shill bidding practice described herein, and payments for Sun Auto vehicles at prices which exceed the fair market value of the vehicles purchased.

114.    Defendants ACV and Sun Auto have unlawfully and unjustly enriched themselves at the expense of the Plaintiffs and the Class members and it is against equity and good conscience to permit ACV and Sun Auto to retain said monies.

{H3328958.1}                          28

115. Accordingly, by reason of the foregoing, ACV and Sun Auto should be required to reimburse the Plaintiffs and Class members for the monies wrongfully obtained and should be found liable in an amount not less than $5,000,000 plus reasonable attorneys fees.

WHEREFORE, the Plaintiffs respectfully request the following relief:

(a)     An Order pursuant to Rule 23 of the Federal Rules of Civil Procedure determining that this action may proceed as a Class Action with the Plaintiffs as Class Representatives;

(b)     A Judgement against the Defendants on behalf of the Plaintiffs and Class members under the First Cause of Action in an amount not less than $5,000,000, together with treble damages and reasonable attorneys fees;

(c)     A Judgement against the Defendants on behalf of the Plaintiffs and New York Subclass members under the Second Cause of Action in an amount not less than $5,000,000, together with treble damages and reasonable attorneys fees;

(d)     A Judgement against the Defendants on behalf of the Plaintiffs and New York Subclass members under the Third Cause of Action for compensatory and punitive damages in an amount determined by the Court plus reasonable attorneys fees;

(e)     A Judgment against the Defendants on behalf of the Plaintiffs and Class members under the Fourth Cause of Action in an amount not less than

$5,000,000, together with punitive damages in an amount determined by the Court plus reasonable attorneys fees;

(f)     A Judgment against the Defendants ACV and Sun Auto on behalf of the Plaintiffs and Class members under the Fifth Cause of Action in an amount not less than $5,000,000, plus reasonable attorneys fees; and

(g)     Appropriate interest, the costs and disbursements of this action and such other and further relief the Court deems proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs respectfully request a jury trial of all matters so triable.

Dated:     March 11, 2022
           Amherst, New York

                                    HOGANWILLIG, PLLC

                          By:       _____
                                    Edward P. Yankelunas, Esq.
                                    Corey J. Hogan, Esq.
                                    Steven M. Cohen, Esq.
                                    *Attorneys for Plaintiffs*
                                    2410 North Forest Road, Suite 301
                                    Amherst, New York 14068
                                    Telephone: (716) 636-7600